IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

**JUAN LUIS ARELLANO,**

Petitioner,

v.

**MICHAEL L. BENOV, Administrator,**

Respondent.

Case No. **1:13-cv-00558 AWI MJS (HC)**

**FINDINGS AND RECOMMENDATION REGARDING PETITION FOR WRIT OF HABEAS CORPUS**

Petitioner is a federal prisoner proceeding *pro se* with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241.

Petitioner raises two claims challenging a disciplinary hearing in which he suffered a loss of good time credit. First, he asserts that the Disciplinary Hearing Officer ("DHO"), an employee of a privately-run correctional institution, did not have authority to discipline him. Second, he asserts that his right to due process was violated when discipline was imposed by the DHO since the DHO was not an independent and impartial decision-maker. (Pet. at 3, ECF No. 1.)

Petitioner filed his petition on April 18, 2013.  Respondent filed an answer to the Petition on July 25, 2013. (Answer, ECF No. 16.) Petitioner filed a traverse to the answer on August 15, 2013. (Traverse, ECF No. 18.)

1

**I.     FACTUAL BACKGROUND**

        Petitioner is serving an aggregated 158-month term of imprisonment for various offenses involving the possession and distribution of methamphetamine. (See Decl. of Jennifer Vickers ("Vickers Decl.") ¶ 2, Attach. 1.) On March 14, 2008, Petitioner arrived at Taft Correctional Institution ("TCI") in Taft, California, for service of a federal term of imprisonment. (Id. ¶ 3, Attach. 3.) TCI is a "federal facility operated by a private company."[1] Since that time, Pettioner has received six incident reports resulting in the loss of 147 days of good conduct time. (Id. ¶¶ 4-9, Attachs. 4, 5, 8, 9, 11, 12, 14, 15, 17, 18, 20, 21.)

        Specifically, on August 28, 2010, Petitioner was found with a black cord split with two exposed wires attached to a headphone jack and a memory chip. For the wires and headphone jack, Petitioner was charged with a violation for possession of something not authorized. (Id. ¶ 4, Attachs. 4-7.) On October 7, 2010, a disciplinary hearing was held and Petitioner was found to have commited the prohibited act and was sanctioned a loss of 13 days good conduct time. (Id.) For the memory card, Petitioner was charged with possession of a hazardous tool. (Id. ¶ 5, Attachs. 8-10.) On October 14, 2010, a disciplinary hearing was held and Petitioner was found to have commited the prohibited act and was sanctioned a loss of 40 days good conduct time. (Id.)

        On August 31, 2010, Petitioner was found with a piece of paper with a bank account number and admitted to gambling.  He was charged with giving money or a thing of value to another inmate or person without staff authorization. (Id. ¶ 6, Attachs. 11-13.) On October 7, 2010, a disciplinary hearing was held and Petitioner was found to have commited the prohibited act and was sanctioned a loss of 13 days good conduct time. (Id.)

        On September 9, 2010, Petitioner received an incident report for use of the

---

[1] See Minneci v. Pollard, 132 S. Ct. 617, 620 (2012). Taft Correctional Institution is a private prison currently owned by Management and Training Corporation which contracts with the Bureau of Prisons to house federal inmates.

1  telephone for abuses other than criminal activity. (Id. ¶ 7, Attachs. 14-16.) On October 7,

2  2010, a disciplinary hearing was held and Petitioner was found to have commited the

3  prohibited act and was sanctioned a loss of 27 days good conduct time. (Id.)

4  On December 23, 2010, Petitioner was overheard engaging in a three-way

5  telephone conversation and received an incident report for use of the telephone for

6  abuses other than criminal activity. (Id. ¶ 8, Attachs. 17-19.) On Jaunary 27, 2011, a

7  disciplinary hearing was held and Petitioner was found to have commited the prohibited

8  act and was sanctioned a loss of 13 days good conduct time. (Id.)

9  Finally, on May 14, 2012, Petitioner admitted that he had possessed a cellphone

10  and he was given an incident report for possession of a hazardous tool. (Id. ¶ 9, Attachs.

11  20-22.) On June 14, 2012, a disciplinary hearing was held and Petitioner was found to

12  have commited the prohibited act and was sanctioned a loss of 41 days good conduct

13  time. (Id.)

14  In the case of each of the disciplinary hearings, the DHO's report and findings

15  were reviewed by Bureau of Prisons ("BOP") staff, the findings were certified, and the

16  recommended sanctions were imposed. Petitioner challenges the results of each hearing

17  by claiming that the DHO was not authortized to impose sanctions because regulations

18  governing disciplinary hearings authorize only BOP staff to sanction inmates.  He also

19  claims  that  the DHO was not impartial.

20  **II.**     **STANDARD OF REVIEW**

21  Writ of habeas corpus relief extends to a person in custody under the authority of

22  the United States. See 28 U.S.C. § 2241.  Writ of habeas corpus relief is available if a

23  federal prisoner can show he is "in custody in violation of the Constitution or laws or

24  treaties of the United States." 28 U.S.C. § 2241(c)(3). Petitioner's claims are proper

25  under 28 U.S.C. § 2241 and not 28 U.S.C. § 2255 because they concern the manner,

26  location, or conditions of the execution of Petitioner's sentence and not the fact of

27  Petitioner's conviction or sentence. Tucker v. Carlson, 925 F.2d 330, 331 (9th Cir.1990)

28  (stating that a challenge to the execution of a sentence is "maintainable only in a petition

1 | for habeas corpus filed pursuant to 28 U.S.C. § 2241"); <u>Montano-Figueroa v. Crabtree</u>,
2 | 162 F.3d 548, 549 (9th Cir. 1998).

3 |       Further, Petitioner is challenging the execution of his sentence at TCI in Taft,
4 | California, which is within the Fresno Division of the Eastern District of California;
5 | therefore, the Court has jurisdiction over this petition. <u>See</u> <u>Brown v. United States</u>, 610
6 | F.2d 672, 677 (9th Cir. 1990).

7 | **II.**    **REVIEW OF THE PETITION**

8 |      **A.**    **Exhaustion of Administrative Remedies**

9 |      "As a prudential matter, courts require that habeas petitioners exhaust all
10 | available judicial and administrative remedies before seeking relief under § 2241."[2]
11 | <u>Ward v. Chavez</u>, 678 F.3d 1042, 1045-1046 (9th Cir. 2012). The exhaustion requirement
12 | in § 2241 cases is not required by statute nor a "jurisdictional" prerequisite. It is a
13 | prudential limit on jurisdiction and can be waived "if pursuing those [administrative]
14 | remedies would be futile." <u>Id.</u>; <u>Castro-Cortez v. INS, 239 F.3d 1037, 1047</u> (9th Cir.
15 | 2001), abrogated on other grounds, <u>Fernandez-Vargas v. Gonzales</u>, 548 U.S. 30 (2006);
16 | <u>Fraley v. U.S. Bureau of Prisons</u>, 1 F.3d 924, 925 (9th Cir. 1993).

17 |      Petitioner did not appeal and exhaust his administrative remedies regarding the
18 | disciplinary findings. Petitioner argues, however, that any administrative appeal would
19 | have been futile since the outcome was based on a BOP policy. (Traverse at 3.) A
20 | March 30, 2007, BOP memorandum regarding inmate discipline at private operated
21 | facilities authorized private prison employees to serve as DHOs and discipline inmates.
22 | (Decl. of Jennifer Vickers ("Vickers Decl.") ¶ 4, ex. 6.) Administrative appeals presenting
23 | a challenge to the authority of an employee of a private prison have been denied based
24 | on the 2007 memorandum. <u>See</u> <u>e.g.</u>, <u>Garcia v. Benov</u>, E.D. Cal. Case No. 1:13-cv-
25 | 00550-LJO-JLT, ECF No. 13-1 at 40-42; <u>Torres-Sainz v. Benov</u>, E.D. Cal. Case No.
26 | 1:13-cv-00896-LJO-SKO, ECF No. 14-1 at 32-36; <u>Kasirem v. Benov</u>, E.D. Cal. Case No.

27
28 |       [2] By contrast, 28 U.S.C. § 2254, which governs habeas corpus petitions filed by petitioners in state custody, specifically requires that petitioners exhaust other avenues of relief. <u>See</u> 28 U.S.C. § 2254(b)(1).

1   1:13-cv-01026-LJO-MJS, ECF No. 13-1 at 35-38.[3] Because any attempt to exhaust

2   administrative remedies would be denied based on the BOP memorandum authorizing

3   private prisons to conduct disciplinary proceedings, exhaustion is futile. Ward v. Chavez,

4   678 F.3d at 1045-1046 (citing, as examples, Fraley, 1 F.3d at 925; Sours v. Chavez, No.

5   2:08-cv-01903-SRB, Dkt. No. 22, 2009 U.S. Dist. LEXIS 76743 at *2 (D. Ariz. June 17,

6   2009)); see also McCarthy v. Madigan, 503 U.S. 140, 148 (1992), (superseded by

7   statute) (Exhaustion not required where the administrative body is shown to be biased or

8   has otherwise predetermined the issue before it.). In light of the futility of pursuing

9   administrative remedies, the exhaustion requirement is waived, and the Court shall

10  review the merits of the petition.

11      **B.**     **Claim One – Lack of Authority of DHO**

12          **1.**     **Authority Under the Prior Version of the Regulations**

13          Petitioner, in his first claim, asserts that the DHO lacked authority to discipline

14  Petitioner as the DHO was not an employee of the BOP as required by applicable

15  Federal Regulations. As described above, Petitioner was found to have committed six

16  disciplinary infractions while at Taft Correctional Institution. Of the six disciplinary

17  findings at issue, five of the hearings occurred prior to the revision of the regulations on

18  June 20, 2011. 76 Fed. Reg. 11078 (March 1, 2011). Accordingly, the Court shall

19  separately analyze the claims relating to the five disciplinary proceedings under the

20  previous regulation and then analyze the last disciplinary proceeding under the current

21  regulations.

22          In support of his claim, Petitioner relies on a recent unpublished Ninth Circuit case

23  in which the same DHO that disciplined Petitioner was found to lack authority under the

24  previous version of the regulation to sanction inmates. See Arredondo-Virula v. Adler,

25  510 Fed. Appx. 581, 582 (9th Cir. 2013). The Ninth Circuit held:

26

27          [3] A court may take judicial notice of court records. See Barron v. Reich, 13 F.3d 1370, 1377 (9th
    Cir. 1994); MGIC Indem. Co. v. Weisman, 803 F.2d 500, 504 (9th Cir. 1986). Accordingly, the Court takes

28  judicial notice of documents filed in related habeas challenges.

Logan [the DHO] was not an employee of the Bureau of Prisons (the B.O.P.) or Federal Prison Industries, Inc. as required by the applicable regulation in place at the time. 28 C.F.R § 541.10(b)(1) (2010). The regulation provided: "only institution staff may take disciplinary action." Staff was defined as "any employee of the Bureau of Prisons or Federal Prison Industries, Inc." 28 C.F.R. § 500.1(b). We note that 28 C.F.R § 541.10(b)(1) is no longer in force.

[Respondent] concedes that [the DHO] was not an employee of the B.O.P. or Federal Prison Industries, Inc.  At oral argument, his counsel suggested that [the DHO] was "an officer". He was not an officer of the B.O.P.

A significant difference exists between employees and independent contractors. Minneci v. Pollard, 132 S. Ct. 617, 623, 181 L. Ed. 2d 606 (2012) (federal inmates have no federal Bivens cause of action for damages against privately-run prison workers because these workers are not federal employees, see also Allied Chem. & Akali Workers of Amer., Local Union No. 1 v. Pittsburgh Plate Glass Co. et al., 404 U.S. 157, 167, 92 S. Ct. 383, 30 L. Ed. 2d 341 (1971). Under the plain meaning of the law, [the DHO] was not authorized to discipline [Petitioner].

Arredondo-Virula, 510 Fed. Appx. at 582.

a.    Collateral Estoppel

Respondent, or in this case his presdecessor, have previously had the opportunity to litigate the issue, and the Ninth Curcuit issued an unpublished case based on the merits of the petition. See Arredondo-Virula, 510 Fed. Appx. at 582. While unpublished dispositions and orders of Ninth Circuit are not usually considered precedent, they are "when relevant under the doctrine of law of the case or rules of claim preclusion or issue preclusion."  9th Cir. Rule 36-3(a). It is noted that principles of res judicata are "not wholly applicable to habeas corpus proceedings." See Preiser v. Rodriguez, 411 U.S. 475, 497 (1973). However, the reasoning for the inapplicability of res judicata to state and federal convictions to allow habeas review is not at issue in the present situation. Id. ("Hence, a state prisoner in the respondents' situation who has been denied relief in the state courts is not precluded from seeking habeas relief on the same claims in federal court.").

The Ninth Circuit has found collateral estoppel where: (1) the issue necessarily decided at the previous proceeding is identical to the one that is currently sought to be relitigated; (2) the first proceeding ended with a final judgment on the merits; and (3) the

1    party against whom collateral estoppel is asserted was a party or in privity with a party in

2    the first proceeding. Skilstaf, Inc. v. CVS Caremark Corp., 669 F.3d 1005, 1021 (9th Cir.

3    2012); Reyn's Pasta Bella, LLC v. Visa USA, Inc., 442 F.3d 741, 746 (9th Cir. 2006).

4        Here, the issue decided in Arredondo-Virula is identical to the one presented

5    here. This petition involves the exact same regulations and procedures implemented by

6    the same correctional institution. The Ninth Circuit decided the issue on the merits, and

7    Respondent, as the subsequent warden or administrator of the facility at which Petitioner

8    is housed, is the same defendant or in privity with the prior respondent. Should issue

9    preclusion apply to habeas proceedings, this Court finds that it should apply to prevent

10   Respondent from relitigating this issue that has previously been adjudicated at the cost

11   of significant judicial resources.

12       While a Court may sua sponte raise issue preclusion, the parties must be

13   provided an opportunity to be heard on the issue. See Headwaters Inc. v. United States

14   Forest Serv., 399 F.3d 1047, 1054-1055 (9th Cir. 2005). Respondent shall have the

15   opportunity to respond to explain why issue preclusion should not apply in his objections

16   to the findings and recommendation.

17                         b.    Merits

18       Regardles of issue preclusion, the Court finds that the regulations at issue do not

19   provide authority for an employee of a private corporation to sanction Peittioner.

20                              i.    Legal Standard for Review and Application of Federal
                                     Regulations
21

22       To resolve the present claims of Petitioner, the Court must interpret the meaning

23   of the regulations and determine whether the BOP is bound by the regulations. The

     standards for review and application of federal regulations are well established under

24   federal law.

25       With respect to interpretation of federal regulations, the agency's interpretation of

26   ambigious regulations is provided deference. Christopher v. SmithKline Beecham Corp.,

27   132 S. Ct. 2156, 2166 (2012). "It is well established that an agency's interpretation need

28

not be the only possible reading of a regulation--or even the best one--to prevail." Decker v. Northwest Envtl. Def. Ctr., 133 S. Ct. 1326, 1337 (2013). Under Auer v. Robbins and Seminole Rock, a court will defer to an agency's interpretation of its regulations, "even in a legal brief, unless the interpretation is plainly erroneous or inconsistent with the regulations or there is any other reason to suspect that the interpretation does not reflect the agency's fair and considered judgment on the matter in question." Talk Am., Inc. v. Mich. Bell Tel. Co., 131 S. Ct. 2254, 2260-2261 (2011) (citation omitted); Chase Bank USA, N. A. v. McCoy, 131 S. Ct. 871, 881 (2011); Auer v. Robbins, 519 U.S. 452, 461 (1997); Bowles v. Seminole Rock & Sand Co., 325 U.S. 410, 411 (1945); Indep. Training & Apprenticeship Program v. Cal. Dep't of Indus. Rels., 730 F.3d 1024, 2013 U.S. App. LEXIS 19255 (9th Cir. 2013). "This is generally called Seminole Rock or Auer deference." Decker, 133 S. Ct. at 1339 (Scalia, J., dissenting.) Justice Scalia summarized Auer deference as follows:

> In practice, Auer deference is Chevron deference applied to regulations rather than statutes. See Chevron U. S. A. Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 104 S. Ct. 2778, 81 L. Ed. 2d 694 (1984). The agency's interpretation will be accepted if, though not the fairest reading of the regulation, it is a plausible reading--within the scope of the ambiguity that the regulation contains.

Id. at 1339-1340.

With respect to the inquiry whether the interpretation does not reflect the agency's fair and considered judgment on the matter in question, "[i]ndicia of inadequate consideration include conflicts between the agency's current and previous interpretations; signs that the agency's interpretation amounts to no more than a convenient litigating position; or an appearance that the agency's interpretation is no more than a post hoc rationalization advanced by an agency seeking to defend past agency action against attack." Price v. Stevedoring Servs. of Am., Inc., 697 F.3d 820, 830 n.4 (9th Cir. 2012) (en banc)) (citing Bowen v. Georgetown Univ. Hosp., 488 U.S. 204, 213 (1988) and Auer, 519 U.S. at 462).

Where a court declines to give an interpretation Auer deference, it accords the

agency's "interpretation a measure of deference proportional to the 'thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade.'" Christopher, 132 S. Ct. at 2169 (quoting United States v. Mead Corp., 533 U.S. 218, 228 (2001)); Indep. Training & Apprenticeship Program, 2013 U.S. App. LEXIS 19255 at *27. This amount of consideration will "vary with circumstances" and may be "near indifference," such as has been given in some cases when considering an "interpretation advanced for the first time in a litigation brief." Mead, 533 U.S. at 228 (citing Bowen, 488 U.S. at 212-13).

With respect to the application of federal regulations generally, the government is bound by the regulations it imposes on itself. United States v. 1996 Freightliner FLD Tractor, 634 F.3d 1113, 1116 (9th Cir. 2011); (citing United States ex rel. Accardi v. Shaughnessy, 347 U.S. 260, 265 (1954)). "Where the rights of individuals are affected, it is incumbent upon agencies to follow their own procedures. This is so even where the internal procedures are possibly more rigorous than otherwise would be required." Morton v. Ruiz, 415 U.S. 199, 235 (1974); Alcaraz v. INS, 384 F.3d 1150, 1162 (9th Cir. 2004).

Having chosen to promulgate a regulation, the agency must follow that regulation. Nat'l Ass'n of Home Builders v. Norton, 340 F.3d 835, 852 (9th Cir. 2003). The Ninth Circuit explained the rational for the Accardi principle:

> An agency's failure to follow its own regulations "tends to cause unjust discrimination and deny adequate notice" and consequently may result in a violation of an individual's constitutional right to due process. NLRB v. Welcome-American Fertilizer Co., 443 F.2d 19, 20 (9th Cir. 1971); see also United States v. Newell, 578 F.2d 827, 834 (9th Cir. 1978). Where a prescribed procedure is intended to protect the interests of a party before the agency, "even though generous beyond the requirements that bind such agency, that procedure must be scrupulously observed." Vitarelli, 359 U.S. at 547 (Frankfurter, J., concurring); see also Note, Violations by Agencies of Their Own Regulations, 87 Harv. L. Rev. 629, 630 (1974) (observing that agency violations of regulations promulgated to provide parties with procedural safeguards generally have been invalidated by courts).

Sameena Inc. v. United States Air Force, 147 F.3d 1148, 1153 (9th Cir. 1998).

1          ii.     Analysis

2          The Ninth Circuit explained in <u>Arredondo-Virula</u> that 28 C.F.R § 541.10(b)(1)

3    provided that: "only institution staff may take disciplinary action." 510 Fed. Appx. at 582.

4    Further, staff was defined as "any employee of the Bureau of Prisons or Federal Prison

5    Industries, Inc." 28 C.F.R. § 500.1(b). <u>Id.</u> Accordingly, the Ninth Circuit found that under

6    the plain meaning of the law, the DHO was not authorized to discipline Petitioner. <u>Id.</u>

7    This Court finds the reasoning of <u>Arredondo-Virula</u> persuasive. The plain meaning of the

8    regulations, when taking into account the meaning of 'staff' as defined by the BOP in the

9    regulation, only allows BOP employees to take disciplinary action.

10         Respondent argues that "[A] plain reading of the regulation clearly permits

11   'institution authorities' and 'institution staff' to impose discipline pursuant to the confines

12   of the program. Therefore, interpreting 'staff' as a reference only to BOP staff

13   circumvents the purpose and scope of the inmate discipline program." (Answer at 8.)

14   While Respondent asserts that interpreting 'staff' to only include BOP staff circumvents

15   the purpose of the discipline program, Respondent does not claim that the plain reading

16   of the regulation requires BOP employees to impose discipline, or that the regulation is

17   ambiguous regarding whether non-BOP employees may discipline inmates. The BOP, in

18   promulgating the regulation choose to define the term 'staff' as only BOP employees,

19   and further chose to use the term in stating that "only institution staff may take

20   disciplinary action." The plain meaning of the regulation is clear, and as such,

21   Respondent's interpretation is not entitled to <u>Auer</u> deference.

22         The Court finds that the regulation is unambiguous. Adopting Respondent's

23   contrary interpretation would "permit the agency, under the guise of interpreting a

24   regulation, to create de facto a new regulation." <u>Chase Bank USA, N.A. v. McCoy</u>, 131

25   S. Ct. 871, 882 (2011); <u>Christensen</u>, 529 U.S. at 588. Respondent's alternative

26   interpretation is "plainly erroneous or inconsistent" with the regulation and not entitled to

27   <u>Auer</u> deference. <u>Id.</u>

28         The regulations require the BOP to provide inmates with disciplinary hearings

1    before a DHO employed by the BOP. The BOP is bound by the regulations it imposes on

2    itself and was not authorized to allow staff of a privately run prison to discipline

3    Petitioner. See United States v. 1996 Freightliner FLD Tractor, 634 F.3d at 1116. The

4    fact that the BOP issued a memorandum creating a disciplinary procedure different than

5    that authorized does not alleviate Respondent's responsibility to follow the regulations.

6    See Nat'l Ass'n of Home Builders v. Norton, 340 F.3d 835, 852 (9th Cir. 2003) ("Having

7    chosen to promulgate a regulation, the agency must follow that regulation.") As

8    Respondent's conduct was not authorized, Petitioner is entitled to habeas corpus relief

9    with regard to the first five disciplinary violations challenged.

10                    **2.    Authority Under the Current Version of the Regulations**

11           Petitioner's last disciplinary hearing was conducted under the current version of

12    the regulations. In order to properly address whether the present regulations allow for a

13    private employee to discipline prisoners, it is necessary to review the prior regulatory

14    framework and the revisions and comments provided in enacting the current reguions.

15           Congress has provided broad authority to the BOP for the "management and

16    regulation of all Federal penal and correctional institutions" including providing suitable

17    quarters and for the safekeeping, care, and subsistence of federal prisoners. See 18

18    U.S.C. § 4042(a). The BOP is also authorized to provide "discipline of all persons

19    charged with or convicted of offenses against the United States." Id.

20                    a.    Regulations Prior to June 20, 2011

21           Prior to June 20, 2011, the regulations promulgated by the BOP governing inmate

22    discipline described the purpose of the regulation: "So that inmates may live in a safe

23    and orderly environment, it is necessary for institution authorities to impose discipline on

24    those inmates whose behavior is not in compliance with Bureau of Prisons rules."  28

25    C.F.R. § 541.10(a). The regulation "appl[ied] to all persons committed to the care,

26    custody, and control (direct or constructive) of the Bureau of Prisons." Id. Furthermore,

27    the regulation explained that "[o]nly institution staff may take disciplinary action." 28

28    C.F.R. § 541.10(b). The definition section of the regulations stated that staff "means any

1    employee of the Bureau of Prisons or Federal Prison Industries, Inc." 28 C.F.R. § 500.1.

2    Based on the former statutory language, the Ninth Circuit in <u>Arredondo-Virula</u>

3    found that the DHO was not an employee of the BOP and did not have the authority to

4    sanction the petitioner.

5    b.    <u>Regulations Enacted on June 20, 2011</u>

6    The regulations were amended in 2011. The BOP amended "its inmate discipline

7    and special housing unit ("SHU") regulations (28 CFR part 541, subpart A and subpart

8    B) to streamline and clarify these regulations, eliminating unnecessary text and obsolete

9    language, and removing internal agency procedures that need not be in regulations

10   text." 75 Fed. Reg. 76263 (Dec. 8, 2010). The newly revised regulations allow "Bureau

11   staff to impose sanctions on inmates who commit prohibited acts" to "help[] ensure the

12   safety, security, and orderly operation of correctional facilities, and the protection of the

13   public."   28 C.F.R. § 541.1   The regulation "applies to sentenced and unsentenced

14   inmates designated to any prison, institution, or facility in which persons are held in

15   custody by direction of, or under an agreement with, the Bureau of Prisons." 28 C.F.R. §

16   541.2. The definition section of the regulations remained the same, explaining that staff

17   "means any employee of the Bureau of Prisons or Federal Prison Industries, Inc." 28

18   C.F.R. § 500.1.

19   c.    <u>Petitioner's Contentions</u>

20   Petitioner contends that the regulations, as stated, only allow BOP staff to

21   discipline inmates. Accordingly, Petitioner asserts that the DHO, an employee of

22   Management and Training Corporation, was not an employee of the BOP and lacked the

23   authority to sanction Petitioner. (<u>See</u> <u>generally</u> Pet. and Traverse, ECF Nos. 1, 18.)

24   d.    <u>Respondent's Contentions</u>

25   Respondent does not dispute, and therefore concedes, that TCI is a private prison

26   and that the DHO who conducted the discipline hearing was not a BOP employee.

27   However, Respondent presents three reasons why such sanctions were authorized.

28   First, Respondent argues that the conduct was authorized based on the language

1  of 28 C.F.R. § 541.2 which provides that the discipline program applies to "inmates

2  designated to any prison, institution, or facility in which persons are held in custody by

3  direction of, or under an agreement with, the Bureau of Prisons." Expanding on that

4  argument, Respondent argues that "[b]y explicitly including contract facilities in the

5  application of the discipline program, it is necessary that the definition of 'staff,' as the

6  term is used in Section 541 be expanded; otherwise, inmates in contract facilities would

7  never be subject to discipline." (Answer at 9.)

8      Second, Respondent relies on a BOP memorandum issued on March 30, 2007,

9  providing guidance in matters involving inmate discipline in privately operated facilities.

10  (Vickers Decl., ¶ 5, Attach 6.)  This memorandum requires that "[C]ontract staff at Taft…

11  will send all DHO decisions regarding the disallowance or forfeiture of GCT [good credit

12  time], along with the recommended sanctions, to the PMB[4] [privatization management

13  branch] DHO. The PMB DHO will review the entire discipline file and make an

14  independent decision regarding the contractor's recommendation." (Id.) Respondent

15  asserts that the procedure implemented by the memorandum comports with the

16  requirement of the regulation set forth in 28 C.F.R. § 541.1 which allows "Bureau staff" to

17  impose sanctions.

18      Finally, Respondent asserts that matters of inmate discipline at residential re-

19  entry centers are also subject to a procedure where private employees discipline

20  inmates subject to review by BOP staff, and that the procedure has withstood judicial

21  review.

22          e.      Analysis

23              i.      Interpretation of the Regulations

24      Petitioner argues that the regulations only allow BOP employees to discipline

25  inmates. See 28 C.F.R. §§ 500.1(b), 541.1.  The Court agrees. Section 541.1 allows

26  "Bureau staff to impose sanctions on inmates who commit prohibited acts." As defined

---

27      [4] Although not defined by Respondent, it appears that the PMB is located at the central office of

28  the BOP and serves to manage contract facilities which have agreements with the BOP.

1   by section 500.1, "staff" is any employee of the Bureau of Prisons or Federal Prison

2   Industries, Inc." Accordingly, the plain language of the regulations state that only BOP

3   staff may discipline prisoners.

4          While the sections were recently revised, nothing in the new regulations can be

5   interpreted to change the meaning of the language regarding who has the right to

6   impose sanctions on inmates. There is no significant distinction between the language of

7   the previous regulation that "[o]nly institution staff may take disciplinary action" and the

8   present regulation which "allow[s] Bureau staff to impose sanctions." Neither regulation

9   purports to extend the authority to discipline or impose sanctions to anyone besides

10  BOP staff, and the modifications are consistent with the stated purpose of streamlining

11  or clarifying the regulations, rather than changing their substantive meaning. See 75

12  Fed. Reg. 76263 (Dec. 8, 2010). Respondent comments that the regulation was

13  amended, but does not attempt to argue that the phrase "allow[s] Bureau staff to impose

14  sanctions" has a different meaning "[o]nly institution staff may take disciplinary action."

15         Instead, Respondent argues that since § 541.2 states that the inmate discipline

16  regulations apply to private facilities that contract with the BOP,  it is "necessary that the

17  definition of 'staff' be expanded to apply to non-BOP employees." (See Answer at 8.

18  (citing 28 C.F.R. § 541.2 ("This program applies to… any prison, institution, or facility in

19  which persons are held in custody by direction of, or under an agreement with, the

20  Bureau of Prisons.")). It is clear from the regulations that the disciplinary procedures set

21  forth in § 541 apply to inmates at contact facilities, such as TCI. However, whether the

22  regulations are intended to apply to inmates held at contract facilities and whether

23  disciplinary sanctions can be issued by anyone but BOP staff are separate inquiries.

24         First, the former regulations apparently also indicated that the discipline process

25  was to apply to inmates at contract facilities. The former regulation "appl[ied] to all

26  persons committed to the care, custody, and control (direct or constructive) of the

27  Bureau of Prisons." See 28 C.F.R. § 541.10(a). While revised, the meaning of the former

28  regulation and § 541.2 appear substantially similar. See 75 Fed. Reg. 76263 (Dec. 8,

2010) (The revisions were made to streamline and clarify the regulations.). Of greater importance, nothing in the language of § 541.2 either expressly or impliedly states that employees of non-BOP institutions can impose sanctions on inmates. To the extent that Respondent attempts to construe its meaning to allow non-BOP employees to discipline inmates, he has not reconciled that with the express language of of § 541.1 which expressly states "Bureau staff to impose sanctions on inmates who commit prohibited acts." 28 C.F.R. § 541.1.

Second, Respondent claims that if only BOP staff can sanction inmates, then inmates at private prisons would never be subject to discipline. (See Answer at 8.) Respondent cites to representative language that states that the disciplinary process is initiated when "staff witness or reasonably believe that [an inmate] committed a prohibited act" and that "[a] staff member will issue [an inmate] an incident report." See 28 C.F.R. § 541.5.

While it might make disciplining inmates at contract facilities more difficult if under the regulations only "staff," defined as BOP employees, can discipline, nothing in the regulations prevent inmates at private facilities from being disciplined. Section 541.5 does not require BOP staff to witness the prohibited act. It is sufficient if they reasonably believe that a prohibited act was committed. Respondent has provided nothing to suggest a BOP staff person could not have a reasonable belief that a prohibited act had been committed based solely on a reliable account from non-BOP staff member employed by the contract facility if the latter either witnessed or investigated a prohibited act. Likewise, nothing in the regulations requires that BOP staff be physically present to conduct disciplinary hearings. Both regulations discussing hearings before the Unit Discipline Committee ("UDC") or before the DHO state that the inmate "may appear… electronically (for example, by video or telephone conferencing)" at the UDC or DHO's discretion. See 28 C.F.R. §§ 541.7(d)(1); 541.8(e)(1). Accordingly, it appears that discipline of inmates at contract facilities could be conducted by BOP staff located elsewhere. Respondent's contention (that limiting "staff" to BOP employees means that

1    inmates at contract facilities would not be subject to discipline) is without merit.

2           Moreover, the Court does not find Respondent's assertion that the express or

3    implied language of the regulations allows non-BOP staff to impose sanctions on

4    inmates. Respondent's election not to claim that the regulatory language is ambiguous

5    renders it inappropriate to invoke <u>Auer</u> deference to its interpretation. <u>See Tibble v.</u>

6    <u>Edison Int'l</u>, 711 F.3d 1061, 1072 n.8 (9th Cir. 2013) (ambiguity in the regulation needs

7    to be shown to invoke <u>Auer</u> deference.) (citing <u>Gonzales v. Oregon</u>, 546 U.S. 243, 255

8    (2006). Respondent presents no argument as to why staff should be defined in a

9    different manner than as expressly described in the regulations, or how the phrase

10   "allow[s] Bureau staff to impose sanctions" is ambiguous and open to interpretation.

11          Instead, Respondent argues that 28 C.F.R. § 541.2, which states that the

12   regulations apply to private facilities with an agreement with the BOP, authorizes non-

13   BOP staff to impose sanctions. Section 541.2 cannot be read in the abstract. The

14   chapter of the regulation governing inmate discipline must be viewed as a whole, and

15   the meaning of sections of the regulation are determined based on the context of the

16   entire chapter. <u>See, e.g.</u>, <u>Nat'l Ass'n of Home Builders v. Defenders of Wildlife</u>, 551 U.S.

17   644, 666 (2007) ("It is a fundamental canon of statutory construction that the words of a

18   statute must be read in their context and with a view to their place in the overall statutory

19   scheme.") (citations omitted). Terms of the regulation should not be read in a manner

20   that would contradict or negate other terms of the regulation. <u>See</u> <u>Decker v. Northwest</u>

21   <u>Envtl. Def. Ctr.</u>, 133 S. Ct. 1326, 1342-1343 (2013) (Scalia, J., dissenting.) (Applying the

22   interpretive presumption of validity - a "canon that we are to prefer the meaning that

23   preserves to the meaning that destroys.") (citing <u>Panama Refining Co. v. Ryan</u>, 293 U.S.

24   388, 439 (1935) (Cardozo, J., dissenting)). Based on cannons of construction, it is not

25   reasonable to interpret section 541.2 in a manner that would negate the plain meaning of

26   sections 500.1(b) and 541.1 which authorize only BOP staff to impose sanctions on

27   inmates. Accordingly, the Court finds that the regulations unambiguously require BOP

28   staff to impose sanctions.  No other meaning could be formed without straining the plain

1    meaning of the terms of the regulation.

2         Because the Court finds that the text of the regulation is not ambiguous and that

3    the interpretation Respondent advances in his briefs is inconsistent with the regulation,

4    the Court "does not grant deference to those views apart from their inherent ability to

5    persuade." Schwab v. Comm'r, 715 F.3d 1169, 1176 (9th Cir. 2013); Christopher, 132 S.

6    Ct. at 2169.

7                              ii.      March 30, 2007 BOP Memorandum

8         Respondent's second argument relies on a BOP memorandum instructing the

9    private employee DHO at TCI to send a copy of the discipline decision to a BOP staff

10   member to review and certify the decision. (See Vickers Decl., ¶ 5, Attach 6.) The

11   memorandum instructs the following procedures be followed:

12             Effective, July 1, 2007, DHO actions involving disallowance or
               forfeiture of Good Conduct Time (GCT) for federal inmates housed at the
13             Taft and McRae facilities will be forwarded to BOP staff for certification
               prior to imposition of sanctions. PMB staff in the Central Office will serve
14             as the BOP's DHO for the purpose of reviewing and certifying DHO
               actions for Taft and McRae. GCT will not be taken without certification.
15

16   (Id.) Respondent asserts that certification process comports with the requirement set

17   forth in § 541.1 requiring "Bureau staff" to impose sanctions.

18        Unfortunately, the framework created by the memorandum is inconsistent with the

19   procedures set forth by the regulations. Section 541.8 sets forth the procedure required

20   for hearings before the DHO and the resulting decision and imposition of sanctions.

21   Under § 541.8, an inmate is allowed to appear before the DHO during the hearing in

22   person or electronically unless the DHO determines the inmate's presence would

23   jeopardize institution security or the inmate waives his right to appear or has escaped or

24   is otherwise absent from custody. 28 C.F.R. § 541.8(e). Inmates are entitled to make a

25   statement and present documentary evidence to the DHO, and the DHO will consider all

26   evidence presented during the hearing and make a decision based on at least some

27   facts and, if there is conflicting evidence, on the greater weight of the evidence. 28

28   C.F.R. § 541.8(f). Inmates can present witnesses to appear before the DHO either in

1  person or electronically, or if the witness cannot appear, written statements of the

2  witness can be considered during the DHO's hearing. Id.

3     If the DHO determines that the inmate committed a prohibited act, he or she can

4  impose any of the available sanctions listed in § 541.3. 28 C.F.R. § 541.8(g). Finally, the

5  DHO prepares a written report of the decision which must set forth whether the inmate

6  was advised of his rights, the evidence relied on by the DHO, the DHO's decision and

7  sanction to be imposed, and the reason for the sanction imposed. 28 C.F.R. § 541.8(h).

8     The regulation requires inmates to have an opportunity to appear and present

9  evidence and witnesses to the DHO, who, upon weighing the evidence, decides if the

10  inmate committed the prohibited act and imposes the appropriate sanctions. In drafting

11  the regulations, it was clearly the intent of the BOP to designate the DHO as the person

12  to issue sanctions against inmates.[5] See 70 Fed. Reg. 43093 (July 26, 2005).[6] The

13  regulations therefore require the inmate to be able to appear before the DHO, who is

14  required to be an employee of the BOP, and the DHO is to issue sanctions against the

15  inmate. The policy set forth by the memorandum does not follow the procedure set forth

16  in the regulations. It either allows a DHO, who is not a BOP employee, to sanction the

17  inmate if reviewed and certified by a BOP employee or it allows a BOP employee to

18  sanction an inmate without the inmate being allowed to present his arguments and

19  ──────────

20  [5] The BOP also authorizes the Unit Discipline Committee ("UDC") to issue sanctions not including loss of good conduct time for lesser violations.

21  [6] The changes to the regulations "alter the list of possible sanctions available to allow [DHO]s

22  more flexibility in adapting the sanction to fit the seriousness of the violation." Id. The new regulations also allow the DHO to impose monetary sanctions for violations. "We made this change to provide DHOs with

23  the flexibility to sanction inmates by imposing monetary fines as a punishment and deterrent to committing prohibited acts. Additionally, by providing another sanctioning option, DHOs are better able to tailor the

24  discipline of individual inmates' in a manner best suited to affect behavioral changes. We also clarify that the sanctions of 'make monetary restitution' and 'monetary fine' *may only be imposed by DHOs.*" 70 Fed.

25  Reg. 43093, 43096 (emphasis added). Additionally, in noting that the new regulations increased the disciplinary segregation sanction available to DHOs the BOP commented, "DHOs will not in fact impose

26  the maximum amount of disciplinary segregation in every case; only in the most egregious circumstances for the most serious offenses." Id. Finally, the BOP also changed "the rule to allow DHOs to impose

27  sanctions that are also available at the UDC level, since such apparently lesser sanctions may likewise be useful in changing inmate behavior at the DHO level." Id. at 43097.
     Based on the clear language of the comments to the proposed regulations, it is not possible to

28  construe the intent of the BOP to allow anyone besides the UDC and DHO to sanction inmates.

1   evidence directly to the BOP employee.

2       If the non-BOP employee at TCI is acting as the DHO and imposing sanctions,

3   the DHO would be complying with the procedures set forth in § 541.8 but would not be

4   authorized to impose those sanctions as he is not a BOP employee as required by §§

5   500.1(b) and 541.1. On the other hand, if the PMB staff member reviewing and certifying

6   the decision is considered the DHO and instituting disciplinary sanctions, he would be an

7   authorized BOP employee allowed to sanction inmates under §§ 500.1(b) and 541.1, but

8   the Petitioner would be deprived of his right to appear before the DHO and present

9   evidence and witnesses as required by § 541.8(g-h). Nothing in the regulations set forth

10  a certification process that would validate an otherwise unauthorized decision by

11  someone who is not an employee of the BOP. Moreover the BOP, in its memorandum,

12  makes no mention of the relevant regulations governing the disciplinary review process

13  or how the instituted polices would comply with the regulations.

14      Under Auer and Seminole Rock, This Court is required to defer to the BOP's

15  interpretation of its regulations, "unless the interpretation is plainly erroneous or

16  inconsistent with the regulations or there is any other reason to suspect that the

17  interpretation does not reflect the agency's fair and considered judgment on the matter in

18  question." Talk Am., Inc., 131 S. Ct. at 2260-2261. Respondent's interpretation based on

19  the procedure set forth in the memorandum is inconsistent with the plain meaning and

20  intent of the regulations regarding disciplinary procedures before a DHO. It is also

21  inconsistent with the comments of the BOP in enacting the regulations. See 70 Fed.

22  Reg. 43093. The regulations set forth who has the authority to sanction inmates and the

23  rights and procedures that inmates have before the DHO. As described above, either

24  alternative proposed by Respondent – that the definition of 'staff' should be enlarged to

25  cover private employees or that the PMB DHO was the actual DHO - poses problematic

26  interpretations of the relevant regulations.

27      Respondent's interpretation is not entitled to Auer deference.  However, the Court

28  must still provide the "interpretation a measure of deference proportional to the

'thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade.'" Christopher, 132 S. Ct. at 2169. The interpretation presented by Respondent in the March 30, 2007 memorandum and its answer to the petition neither addresses, nor reconciles, the inconsistencies between the active policy and the requirements of the relevant regulations. Respondent's policy does not explain how it complies with the requirements set forth in § 541, requiring only staff to sanction an inmate, and how the DHO, whom the inmate has the right to appear personally before, is the party to sanction the inmate. Likewise, Respondent in his briefing urges the Court to either expand the definition of staff or consider the PMB DHO as the actual DHO, without presenting persuasive arguments about how that is authorized by the regulations. Respondent's claims that a contrary interpretation would be a hardship to the BOP, while possibly true, provides little guidance to the Court in interpreting what the BOP is authorized by regulation to do.

As Auer deference does not apply to Respondent's interpretation of the regulations, the Court "must employ traditional tools of interpretation" in reviewing the language of the governing statute and regulations to determine their meaning. Christopher, 132 S. Ct. at 2170. Congress provided broad authority to the BOP to manage correctional institutions and to provide discipline to inmates. See 18 U.S.C. § 4042(a). It is possible that the statutory grant of authority by Congress would allow the BOP to delegating the authority to discipline inmates to private contractors. See Chevron, U.S.A., Inc., 467 U.S. at 844. Regardless, the statute is silent regarding any delegation, and is of little assistance in interpreting the language of the regulations promulgated by the BOP, which are more detailed and onerous than the statute. See Alcaraz v. INS, 384 F.3d at 1162.

The regulations clearly define the definition of staff: "Staff means any employee of the Bureau of Prisons or Federal Prison Industries, Inc." 28 C.F.R. § 500.1(b). Under rules of statutory construction, "we must follow that definition, even if it varies from that

1    term's ordinary meaning." Stenberg v. Carhart, 530 U.S. 914, 942 (2000). The regulation

2    states what the term staff means, and "[a]s a rule, 'a definition which declares what a

3    term "means" . . . excludes any meaning that is not stated." Id. (citing Colautti v. Franklin,

4    439 U.S. 379, 392-393, n. 10 (1979).

5         The regulations further explain that Bureau staff may impose sanctions, and that

6    the DHO is the staff member to impose sanctions. See 28 C.F.R. §§ 541.1; 541.8. The

7    regulations provide an extensive discussion regarding the disciplinary process before the

8    UDC and DHO and subsequent administrative appeals of any sanction imposed by the

9    DHO. However, the regulations do not mention procedures where a BOP staff member

10   can certify the decision to impose sanctions made by an employee of a privately run

11   institution. Respondent's contentions that the policy set forth in the BOP memorandum

12   are authorized fail to address the problems and inconsistencies with the procedure set

13   forth in the memorandum and those required by the regulation. As Respondent has not

14   addressed basic issues such as interpretation of the language of the regulation,

15   Respondent's interpretation, while considered, is of little weight. Christopher 132 S. Ct.

16   at 2169; Mead, 533 U.S. at 228.

17                        iii.    RCC Disciplinary Procedure and Other Relevant
                                  Caselaw
18
19        Respondent, in his last argument, asserts that the current policy of the BOP

20   complies with Petitioner's due process rights because matters involving inmate discipline

21   in Residential Re-entry Centers ("RRC") are subject to a similar protocol. Respondent

22   cites to several decisions where courts have upheld RRC decisions as satisfying due

23   process requirements. See Answer at 9-10 (citing Flores v. Thomas, No. 3:11-cv-355-

24   MA, 2012 WL 70575, at *3 (D. Or. Jan. 5, 2012); Dickerson v. Thomas, No. 11-cv-744-

25   MA, 2011 WL 3704264, at *4 (D. Or. Aug. 22, 2011); Stevens v. Thomas, No. 11-cv-790-

26   MA, 2011 WL 3563131, at *3 (D. Or. Aug. 10, 2011); Harris v. Norwood, No. CV 07-

27   2588-SGL, 2008 WL 5377647, at *1 (C.D. Cal. Dec. 16, 2008)). The Court does not find

28   the cases provided by Respondent persuasive. The cases, while finding that the

1   inmates' due process rights were observed, do not address the issue presented here,

2   i.e., whether the regulations authorize someone who is not an employee of the BOP to

3   impose sanctions on inmates.

4       In <u>Flores v. Thomas</u>, No. 3:11-cv-355-MA, 2012 WL 70575, at *3 (D. Or. Jan. 5,

5   2012), the inmate was transferred from an RRC to a federal prison where he was

6   disciplined. It does not appear that the petitioner was disciplined by a private employee,

7   nor does the petitioner present a claim on that ground.

8       In <u>Dickerson v. Thomas</u> and <u>Stevens v. Thomas</u>, the court denied the petitioners'

9   claims that due process required inmates have the opportunity to argue directly to the

10   DHO rather than the discipline committee at the contract facility at which he was housed.

11   The court rejected the argument based on both the BOP's policy statement allowing

12   discipline at contract facilities to be held before non-BOP staff if reviewed by a BOP staff

13   member and the fact the petitioners did not have a due process right under <u>Wolff v.</u>

14   <u>McDonnell</u>, 418 U.S. 539 (1974) to a hearing before the DHO. <u>See</u> <u>Dickerson</u>, 2011 WL

15   3704264, at *4 ("<u>Wolff</u> does not mandate that petitioner be granted two hearings, one

16   before the CDC and one before the DHO.") (citations omitted); Community Corrections

17   Manual, BOP Program Statement 7300.09, p. 18- 19. Neither rationale addresses the

18   issues presented here. Despite the fact that the regulations apply to such facilities, the

19   petitioners did not raise the argument, nor did the court mention the regulations in its

20   decision. 28 C.F.R. § 541.2. Whether due process under <u>Wolff</u> was satisfied is a

21   separate inquiry from whether the BOP followed its own regulations. <u>See</u> <u>1996</u>

22   <u>Freightliner FLD Tractor</u>, 634 F.3d at 1116; <u>Nat'l Ass'n of Home Builders v. Norton</u>, 340

23   F.3d at 852. As <u>Dickerson</u> and <u>Stevens</u> did not address the questions raised here, their

24   holdings and rationale are not persuasive.

25       Finally, in <u>Harris v. Norwood</u>, 2008 U.S. Dist. LEXIS 105248 (C.D. Cal. 2008), the

26   court found no due process violation, but did not address issues regarding the authority

27   to sanction the inmate or the interplay between the regulations and the BOP program

28   statement authorizing discipline by employees at contract facilities. Nothing in the

1  decision addresses, let alone questions, the issues raised here. The court provides the

2  decision little weight.

3  In summary, while there are similar policy statements regarding the procedure of

4  disciplining inmates at RCCs, the policies and cases upholding those decisions do not

5  address the relevant regulation at issue here, i.e., that requiring a DHO, employed by the

6  BOP, to be the party to impose sanctions on inmates. The decisions do not explain why

7  the BOP would not be "bound by the regulations it imposes on itself." 1996 Freightliner

8  FLD Tractor, 634 F.3d at 1116.

9  Other courts have addressed this issue, but have not addressed the concerns

10  raised above based on the interpretation of the meaning of the regulations. In Sejour v.

11  Sanders, 2012 U.S. Dist. LEXIS 52483 (C.D. Cal. Jan. 18, 2012), the court found that

12  the DHO, an employee of a private prison, had the authority to discipline inmates.

13  However, the analysis only addressed whether the statutory grant of authority by

14  Congress authorized the conduct under Chevron, U.S.A., Inc. v. Natural Resources

15  Defense Council, Inc., 467 U.S. 837, 844 (1984). The court failed to address the

16  language of the regulations promulgated by the BOP and the limitations imposed by the

17  regulations. Even if the statute would allow the conduct in question, the BOP is bound by

18  the more limiting language of the regulations. See Morton v. Ruiz, 415 U.S.  at 235;

19  Alcaraz v. INS, 384 F.3d at 1162. As Sejour did not address the language of the

20  regulations, the Court does not find its reasoning persuasive.

21  In Hilario-Paulino v. Pugh, the Eleventh Circuit dealt with a similar argument in

22  determining if the BOP violated the regulation set forth in 28 C.F.R. § 0.97 which allows

23  the Director of the Bureau of Prisons to redelegate authority, functions or duties vested

24  in him to employees of the Department of Justice. 194 Fed. Appx. 900 (11th Cir. Ga.

25  2006) (unpublished).[7] The court held that BOP's interpretation that the regulation was

26

27  _____

   [7] While unpublished and not considered binding precedent, the case may be cited as persuasive
   authority. See 11th Cir. Rule 36-3.

28

1    not violated because of the ability of BOP employees to review the disciplinary decision

2    of a private employee was entitled to substantial deference. Id. at 903-04. Nothing in the

3    Hilario-Paulino decision discusses the other regulations, including the rights of prisoners

4    to appear and present their claims before a DHO employed by the BOP. That lack of

5    discussion of other relevant regulations makes the reasoning of Hilario-Paulino non-

6    persuasive here. The language of the regulations regarding re-delegation of authority

7    under § 0.97, like the regulations authorizing discipline, are both limited by their plain

8    language to "BOP employees". Furthermore, the process allowed by internal policy

9    memos would contradict and negate the language of § 541.8 which allows an inmate to

10   present his case to the person issuing the disciplinary decision.  As the decision does

11   not thoroughly discuss the issues presented by redelgation of authority or by considering

12   staff of private prisons staff of the BOP, the decision is not entitled to deference. [8]

13   Christopher, 132 S. Ct. at 2169; see also Minneci v. Pollard, 132 S. Ct. 617, 623 (2012)

14   (employment status of employees of a private prison rather than employees of the BOP

15   makes "a critical difference" in Bivens actions.) .

16          The Court finds that the regulations require that an inmate have an opportunity to

17   appear before a DHO employed by the BOP. See 28 C.F.R. §§ 500.1, 541.2, 541.8.

18   Furthermore, the regulations only authorize the DHO to impose sanctions. Id. The

19   subparts of the regulations, when read together, are unambiguous. Adopting

20   Respondent's contrary interpretation would "permit the agency, under the guise of

21   interpreting a regulation, to create de facto a new regulation." Chase Bank USA, N.A. v.

22   McCoy, 131 S. Ct. 871, 882 (2011); Christensen, 529 U.S. at 588. Respondent's

23   alternative interpretation is "plainly erroneous or inconsistent" with the regulation and not

24

25          [8] Likewise, the decisions of the lower courts which determined the redelegation was authorized
     without addressing contrary language in the regulations are not persuasive. See  Gallo v. Pugh, 2005 U.S.
26   Dist. LEXIS 17589 (S.D. Ga. 2005); Rivera v. Pugh, 2005 U.S. Dist. LEXIS 41262 (S.D. Ga. 2005); Revelo
     v. Pugh, 2006 U.S. Dist. LEXIS 17792 (S.D. Ga. 2006); Diaz v. Pugh, 2006 U.S. Dist. LEXIS 66415 (S.D.
27   Ga. 2006); Duy v. Fed. Bureau of Prisons, 2006 U.S. Dist. LEXIS 95405 (D.S.C. 2006);  Saleem v. Wells,
     2010 U.S. Dist. LEXIS 85386 (S.D. Ga. 2010); Pena-Morfe v. Wells, 2010 U.S. Dist. LEXIS 86847, 17-18
28   (S.D. Ga. 2010).

1    entitled to <u>Auer</u> deference. <u>Id.</u>

2         The regulations require the BOP to provide inmates with disciplinary hearings

3    before a DHO employed by the BOP.  The BOP is bound by the regulations it imposes

4    on itself and was not authorized to allow staff of a privately run prison to discipline

5    Petitioner. <u>See</u> <u>United States v. 1996 Freightliner FLD Tractor</u>, 634 F.3d at 1116. The

6    fact that the BOP issued a memorandum creating a disciplinary procedure different than

7    that authorized does not alleviate Respondent's responsibility to follow the regulations.

8    <u>See</u> <u>Nat'l Ass'n of Home Builders v. Norton</u>, 340 F.3d 835, 852 (9th Cir. 2003) ("Having

9    chosen to promulgate a regulation, the agency must follow that regulation.") As

10   Respondent's conduct was not authorized, Petitioner is entitled to habeas corpus relief

11   with regard to his sixth disciplinary violation.

12   **IV.    RESERVATION OF REMAINING CLAIM**

13        Petitioner is entitled to relief on his first claim that the employee of TCI did not

14   possesses the proper authority under the regulations to saction Petitioner. Accordingly, a

15   determination of Petitioner's second claim, namely, that the hearing officer was not

16   impartial, is unnecessary. In granting the petition on claim one, the Court is is providing

17   Petitioner the relief requested. <u>See</u> e.g., <u>Blazak v. Ricketts</u>, 971 F.2d 1408, 1413 (9th

18   Cir. 1992) (A district court order requiring the state to retry the Petitioner was final

19   because it "left nothing to be done but the execution of the judgment," "disposed of all

20   the conviction related claims," and "granted all the relief requested."); <u>Buckley v.</u>

21   <u>Terhune</u>, 266 F. Supp. 2d 1124, 1144 (C.D. Cal. 2002) (Further, "[e]ven if petitioner

22   prevailed on one or more of his other claims, he could obtain no greater relief than that

23   to which he already is entitled."). The Court therefore reserves judgment on the

24   remaining claim. <u>Blazak</u>, 971 F.2d at 1413 ("[W]hen habeas is granted on a conviction

25   issue rather than a sentencing issue, requiring the district court to resolve at one time all

26   the issues raised in the petition could actually delay the proceedings unnecessarily and

27   waste the district court's scarce judicial resources.").

28   ///

1    **V.    RECOMMENDED RELIEF**

2         It is well established that federal district courts have broad discretion in

3    conditioning a judgment granting habeas relief. Hilton v. Braunskill, 481 U.S. 770, 775

4    (1987). Pursuant to 28 U.S.C. § 2243, federal courts are authorized to dispose of

5    habeas corpus matters "as law and justice require." "In modern practice, courts employ a

6    conditional order of release in appropriate circumstances, which orders the

7    [Government] to release the petitioner unless the [Government] takes some remedial

8    action, such as to retry (or resentence) the petitioner." Harvest v. Castro, 531 F.3d 737,

9    741-742 (9th Cir. 2008) (citing Wilkinson v. Dotson, 544 U.S. 74, 89 (2005) (Kennedy, J.,

10   dissenting); Herrera v. Collins, 506 U.S. 390, 403 (1993); Hilton v. Braunskill, 481 U.S. at

11   775 ("[T]his Court has repeatedly stated that federal courts may delay the release of a

12   successful habeas petitioner in order to provide the State an opportunity to correct the

13   constitutional violation found by the court."); In re Bonner, 151 U.S. 242, 259-60 (1894)).

14        Accordingly the Court recommends that Petitioner's good credit time relating to

15   each of the disciplinary violations challenged be reinstated within thirty days of the

16   adoption of the instant Findings and Recommendation by the District Court Judge unless

17   Respondent notifies the Court of the Government's intent to provide Petitioner new

18   disciplinary hearings within ninety days.

19   **VI.   CONCLUSION AND RECOMMENDATION**

20        Accordingly, IT IS HEREBY RECOMMENDED that the Court find that Petitioner is

21   entitled to relief with regard to the first claim of the Petition for Writ of Habeas Corpus

22   and that Petitioner's good credit time be restored or Petitioner be granted new

23   disciplinary hearings.

24        This Findings and Recommendation is submitted to the assigned District Judge,

25   pursuant to the provisions of Title 28 U.S.C. § 636(b)(1) and Local Rule 304. Within

26   fourteen (14) days after being served with the Findings and Recommendation, any party

27   may file written objections with the Court and serve a copy on all parties. Such a

28   document should be captioned "Objections to Magistrate Judge's Findings and

Recommendation." Any reply to the objections shall be served and filed within fourteen (14) days after service of the objections.

The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).


IT IS SO ORDERED.

Dated:   March 26, 2014                      /s/ *Michael J. Seng*
                                             UNITED STATES MAGISTRATE JUDGE